**IN RE: IRISH BANK RESOLUTION CORPORATION LIMITED (IN SPECIAL LIQUIDATION), Debtor in a foreign proceeding.**

Case No.: 13-12159 (CSS)

United States Bankruptcy Court, D. Delaware.

Signed November 7, 2016

628

630

COLE SCHOTZ P.C., David R. Hurst, 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, -and- David M. Bass, Daniel F.X. Geoghan, 1325 Avenue of the Americas, 19th Floor, New York, New York 10019, Counsel for the Foreign, Representatives of Irish Bank, Resolution Corporation Limited

YOUNG CONAWAY STARGATT, & TAYLOR, LLP, Kathaleen S. McCormick, Patrick A. Jackson, Michael S. Neiburg, Rodney Square, 1000 North King Street, Wilmington, DE 19801, -and- ZWILLGEN PLLC, Robert F. Huff, 300 N. LaSalle Street, Suite 4925, Chicago, IL 60654, -and- Nury A. Siekkinen, 1900 M. Street,

NW, Suite 250, Washington DC 20036, Counsel for Yahoo! Inc.

## OPINION [1]

Sontchi, J.

## INTRODUCTION

Pending before the Court is a motion filed by Kieran Wallace and Eamonn Richardson, the duly appointed and authorized Chapter 15 foreign representatives (the "Foreign Representatives") of Irish Bank Resolution Corporation Limited ("IBRC" or the "Debtor"), for entry of an order pursuant to 11 U.S.C. sections 542, 1521(a)(5) and 1521(a)(7) (the "Bankruptcy Code"), directing Yahoo! Inc. ("Yahoo") to turn over to the Foreign Representatives all electronically stored information contained in the Yahoo Account (as defined below) (the "Turnover Motion").[2] Yahoo objects to the relief sought by the Foreign Representatives.

The primary issue is whether the Court should order an email service provider to hand over contents contained in a private email account after the account user evaded the proceeding and failed to comply with several discovery orders. For the reasons set forth below, the Court will deny the Turnover Motion. The Court finds that the Foreign Representatives failed to present sufficient evidence that proves that the contents of the Yahoo Account are part of IBRC's property or relate to IBRC's property or financial affairs. Accordingly, the Court holds that the Foreign Representatives have not met their burden of proof under the turnover provisions of the Bankruptcy Code. The Court further holds that

the Stored Communication Act[3] (the "SCA") prohibits, under the circumstances of this matter, the disclosure of information from a private email account without the actual user's consent. Specifically, the Court finds that the SCA and the case law interpreting it do not support the notion of compelling an email service provider to disclose electronically stored information based on a theory of imputed consent or by designating a third-party as the "subscriber."

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1410. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (O) and (P) and this Court has the judicial power to enter a final order.

## STATEMENT OF FACTS

### A. General Background

This motion is the last in a series of motions filed by the Foreign Representatives in an effort to obtain information contained in the email address abdrasim@yahoo.com (the "Yahoo Account"), which is allegedly maintained by one who goes by the name of "Abdullah Rasimov" ("Rasimov"). Generally, this matter is related to a large-scale litigation pending in Ireland (and other jurisdictions) involving the liquidation of IBRC, the successor to Anglo Irish Bank Corporation Limited and Irish Nationwide Building Society (the "Irish Proceeding").[4]

---

**1.** This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, which is applicable to this matter by virtue of Fed. R. Bankr. P. 9014.

**2.** D.I. 571.

**3.** 18 U.S.C. §§ 2701, *et seq.*

**4.** A full factual background of the Irish Proceeding is described in the Court's findings of fact and conclusions of law from April 30, 2014. D.I. 307.

More specifically, this motion is related to Seán Quinn and his five adult children's (collectively, the "Quinn Family") efforts to evade repayments on approximately €2.8 billion in loans advanced by IBRC to companies owned or controlled by the Quinn Family. Around May 2011, IBRC attempted to enforce its security interests linked with the loans advanced to those companies. However, soon after, the Quinn Family initiated proceedings seeking to set aside the security interests held by IBRC as invalid and unenforceable on the ground that the underlying lending was illegal. Since then, the Irish Supreme Court has held that IBRC's entitlement to be repaid those challenged loans is enforceable. Furthermore, allegedly, courts in Ireland have found that the Quinn Family have engaged in a sophisticated scheme to evade repayment of the IBRC loans. Numerous orders have been entered against the Quinn Family and their agents in order to prevent the dissipation of IBRC assets. Notwithstanding those orders, IBRC has been unable to enforce its security interests or to recover assets which have been dissipated as part of the alleged scheme and has remain frustrated in its efforts to achieve repayment of the IBRC loans.

On February 21, 2014, after allegedly receiving information from informants about certain emails addresses that were being used in connection with the Quinn Family's scheme, the Foreign Representatives filed an *ex parte* application with the English High Court (the "English Application") for discovery against certain respondents, including Yahoo! Inc. UK. Through the English Application, the Foreign Representatives sought to conduct discovery relating to the Quinn Family. On February 24, 2014, the English High Court granted the English Application and entered various orders pertaining to IBRC's requested relief. Among other things, the English High Court permitted a confidential investigation of various respondents, including Yahoo! Inc. UK.

The Foreign Representatives allege that through the information received from the informants and through the discovery permitted by the English High Court, they have discovered various email accounts believed to be connected to the Quinn Family's attempt to conceal assets. Several of those email accounts are maintained and supported by companies providing access to email services operating in the United States. Among those, and at the center of this motion, is a Yahoo email account.

### B. Procedural History

#### i. The Chapter 15 Recognition Proceeding

The Foreign Representatives commenced a voluntary case under Chapter 15 of the Bankruptcy Code by filing a petition, seeking recognition of an insolvency legal proceeding in Ireland, with this Court on August 26, 2013.[5] On December 18, 2013, the Court entered an Order Granting Recognition of Foreign Main Proceeding and Related Relief (the "Recognition Order").[6] Following that, on April 30, 2014, the Court issued an opinion setting forth the basis for the Recognition Order.[7]

#### ii. Discovery Orders Obtained from this Court

On March 12, 2014, the Foreign Representatives submitted an *ex parte* motion seeking discovery pursuant to Bankruptcy Rule 2004 from certain email service pro-

---

**5.** D.I. 1.

**6.** D.I. 187.

**7.** D.I. 307.

viders, including Yahoo (the "Discovery Motion"). The Foreign Representatives intended for the discovery to supplement the discovery already ordered by the English High Court. Thus, the Foreign Representatives requested a temporary order mandating that their investigation of Yahoo, among others, be maintained confidential and that the pleadings related to the investigation remain under seal for a period of four weeks, subject to extension for cause. On March 14, 2014, this Court held an *ex parte* hearing on the Discovery Motion and issued an order approving it (the "Discovery Order"). Following two extensions that were granted by the Court, IBRC filed all of the underlying pleadings, orders and notices of subpoenas on this Court's docket,[8] and served copies of the same upon members of the Quinn Family and their counsel.

### *iii. The Yahoo Subpoenas*

Following the Court's execution of the Discovery Order, on March 14, 2014, the Foreign Representatives served an initial subpoena upon Yahoo. The Foreign Representatives requested that Yahoo produce all documents concerning or relating to: (a) the subscriber details for the Yahoo Account; (b) the IP login history relating to the Yahoo Account; (c) the IP addresses of computers or devices used to access the Yahoo Account; and (d) other metadata regarding the Yahoo Account. In response, Yahoo produced certain documents and other materials.

On May 29, 2014, the Foreign Representatives served a subsequent subpoena upon Yahoo (the "Follow-up Yahoo Subpoena"). This time, the Foreign Representatives requested that Yahoo produce all electronically stored information contained in the Yahoo Account. While Yahoo made available additional documents in response to the Follow-up Yahoo Subpoena, Yahoo did not produce any emails or other content contained in the Yahoo Account. Yahoo asserted that it was barred from doing so under internal governing policies and the applicable statute (i.e. the SCA).

### *iv. The 2004 Application*

On October 1, 2014, the Foreign Representatives submitted a Motion for an Order Compelling the Production of Documents Pursuant to Federal Rules of Bankruptcy Procedure 2004 (the "2004 Application").[9] Through the 2004 Application, the Foreign Representatives asked for of an order compelling Rasimov to provide the documents sought in the Follow-up Yahoo Subpoena. Since the whereabouts of Rasimov is unknown, the Foreign Representatives served the 2004 Application upon Rasimov via the email address associated with the Yahoo Account. The Foreign Representatives received no indication that the 2004 Application was not delivered successfully thereto.[10] The 2004 Application was scheduled for hearing on October 17, 2014. However, no objections were received by any party. Accordingly, the Court cancelled the hearing and entered the proposed order granting the 2004 Application on October 15, 2014 (the "2004 Order").[11] The 2004 Order specifically permitted the Foreign Representatives to serve Rasimov via the Yahoo Account.[12]

Following entry of the 2004 Order, counsel for the Foreign Representatives at-

---

8. D.I. 354, 355, 356 and 357.

9. D.I. 438.

10. Durrer Decl., ¶ 2.

11. D.I. 442.

12. The 2004 Order, ¶ 2, D.I. 442.

tempted to serve a copy of the 2004 Order upon Rasimov through the Yahoo Account.[13] This time, however, the counsel received an automated email response indicating that "Delivery has failed" and further noting that "This user doesn't have a yahoo.com account (abdrasim@yahoo.com)."[14] The Counsel attempted service of the 2004 Order via email on October 15, 2014 and again on October 16, 2014, and received the same automated response in both instances.[15] Rasimov never complied with the 2004 Order.

### v. The Order to Compel

After failing to obtain from Rasimov the information sought pursuant to the 2004 Order, the Foreign Representatives filed a motion for an order compelling compliance with the previous order (the "Motion to Compel") on October 31, 2014.[16] By the Motion to compel, the Foreign Representatives sought for an order compelling Rasimov to provide the information entreated by the 2004 Order, directing Rasimov to consent to the release of the contents contained in the Yahoo Account or, in the alternative, authorizing the Foreign Representative to consent to the release of the information on behalf of Rasimov. On November 20, 2014, this Court granted the relief sought in the Motion to Compel (the "Order to Compel").[17] Among other things, the Court ordered the following with respect to Rasimov and the Yahoo Account:

> In order to afford a remedy appropriate in light of the failure of Rasimov to comply with previously issued discovery and orders of this court, Rasimov is directed to provide written consent to

Yahoo to release of any and all electronically stored information, including but not limited any and all electronic mail, contained in the Yahoo Account to the Foreign Representatives. If Rasimov fails to deliver such written consent to Yahoo within seven (7) business days of entry of this Order, the Foreign Representatives and their agents are authorized and directed to execute or deliver or to join in the execution or delivery of any instrument, and to perform any other act, necessary to provide "lawful consent" pursuant to 18 U.S.C. §§ 2701, *et seq.*, and any other similar or local legislative body or administrative entity, on behalf of and in the name of Rasimov.[18]

. . .

> The Foreign Representative, IBRC, and their agents are hereby authorized and directed to execute or deliver or to join in the execution or delivery of any instrument, and to perform any other act, necessary to comply with this Order.[19]

### vi. The Subscriber Order

Although the Order to Compel directed Rasimov to provide written consent to Yahoo for the release of all relevant electronic information contained in the Yahoo Account, Rasimov failed again to comply with the Court's order. Actually, Rasimov never appeared or responded at any stage of this litigation. Accordingly, on December 2, 2014, the Foreign Representatives attempted to provide Yahoo with "lawful consent," on behalf and in the name of Rasimov, to release the contents of the Yahoo Account.

---

13. Durrer Decl., ¶ 3.

14. Durrer Decl. Ex. C.

15. Durrer Decl. Ex. E.

16. D.I. 447.

17. D.I. 462.

18. Order to Compel, ¶ 2. D.I. 462.

19. Order to Compel, ¶ 4. D.I. 462.

Yahoo, however, declined to comply with the Foreign Representatives' request, asserting that, notwithstanding the Order to Compel, the Foreign Representatives cannot provide "lawful consent." Yahoo claimed that it is barred from releasing the contents of the Yahoo Account under internal governing policies and the applicable statute, which prohibits any release absent "lawful consent" from one of the parties identified in the SCA § 2702(b)(3) (i.e., either the "originator" of the communication, "an addressee or intended recipient of such communication," or the "subscriber"). Accordingly, Yahoo alleged that the Foreign Representatives do not fall under any of these categories.

In light of Yahoo's reluctance to cooperate with the Foreign Representatives' request, the Foreign Representatives filed another motion aimed at obtaining the information in the Yahoo Account. This time, the Foreign Representatives sought entry of an order in aid of the Order to Compel, which would designate the Foreign Representatives as the "subscriber" of the Yahoo Account, and accordingly, to the Foreign Representatives' view, would remove all doubts that the Foreign Representatives have the legal status of a party that could provide "lawful consent" within the meaning of the SCA (the "Motion in Aid of the Order to Compel").[20] The Motion in Aid of the Order to Compel was also served on Yahoo.[21]

On October 8, 2015, the Court entered an Order in Aid of Prior Order Compelling Compliance with Subpoena and Directing Consent to Release of Information (the "Subscriber Order").[22] The Subscriber Order ruled as follows:

In order to afford a remedy appropriate in light of the failure of Rasimov to comply with previously issued discovery and orders of this court, and in aid of the Order to Compel, the Foreign Representatives shall be and hereby are designated as the "subscriber" of the Yahoo Account, and as subscriber, shall and hereby are permitted to consent to the release of any and all electronically stored information, including but not limited to any and all electronic mail, contained in the Yahoo Account to the Foreign Representatives. The consent authorized hereby shall constitute "lawful consent" within the meaning of 18 U.S.C. §§ 2701, *et seq.*, and any other similar or related statute, rule or regulation promulgated by any federal, state or local legislative body or administrative entity.[23]

On December 17, 2015, Mr. Wallace (one of the appointed Foreign Representatives) issued a consent to search and account verification form to Yahoo, along with a copy of the Subscriber Order.[24] However, Yahoo refused again to comply with the Foreign Representatives' request for the disclosure of contents contained in the Yahoo Account. On January 5 and 6, 2016, Yahoo's counsel communicated to counsel for the Foreign Representatives that it could not hand over the requested contents from the Yahoo Account.[25] Yahoo continued to hold the position that the Foreign Representatives' consent falls short of the consent required and, thus, has continued

**20.** Foreign Representatives' Motion for an Order in Aid of Prior Order Compelling Compliance With Subpoena and Directing Consent to Release of Information. D.I. 553.

**21.** D.I. 557.

**22.** D.I. 555.

**23.** *Id.* at ¶ 2.

**24.** Hurst Decl. Ex. A.

**25.** Huff Decl., ¶ 3.

to withhold production of the requested information.

On January 21, 2016, pursuant to Federal Rules of Civil Procedure § 45, Yahoo filed a Motion to Quash in the Northern District of California, the district where production was required under the Follow-up Yahoo Subpoena.[26] On January 26, 2016, the Foreign Representatives withdrew from the Follow-up Yahoo Subpoena.[27] On February 2, 2016, Yahoo voluntarily dismissed the Motion to Quash without prejudice.[28]

### vii. The Turnover Motion, the Hearing and the Supplemental Briefings

In between, on January 20, 2016, the Foreign Representatives filed the Turnover Motion asking for an order (1) granting additional relief pursuant to 11 U.S.C. §§ 1521(a)(5) and 1521(a)(7) and (2) directing Yahoo to turn over information to the Foreign Representatives.[29] By the Turnover Motion the Foreign Representatives seek an order, including through § 542 of the Bankruptcy Code, that will direct Yahoo to hand over to the Foreign Representatives all electronically stored information contained in the Yahoo Account. On February 10, 2016, Yahoo filed its objection to the Turnover Motion,[30] and on February 25, 2016, the Foreign Representatives filed a reply in support of the Turnover Motion.[31]

The Court heard arguments on the Turnover Motion on March 1, 2016, and at the conclusion of the hearing took the matter under advisement (the "Hearing").[32] Following the Hearing, on April 21, 2016, Yahoo filed a request for an order for leave and permission to file a supplemental brief in further support of its objection and to address specific questions raised by the Court at the Hearing.[33] On April 25, 2016, the Foreign Representatives filed their objection to Yahoo's request for a permission to file a post-hearing brief.[34] On June 13, 2016, the Court accepted Yahoo's motion and entered an order granting both Yahoo and the Foreign Representatives permission to file post-hearing briefs.[35] Accordingly, Yahoo's supplemental briefing filed on April 21, 2016,[36] was accepted, and on July 11, 2016, the Foreign Representatives filed their supplemental reply.[37] The matter is now fully briefed and is ripe for the Court's consideration.

### ANALYSIS

As set forth above, Yahoo objects to the Foreign Representatives demand to hand over information from the Yahoo Account. Yahoo's main assertion is that the SCA prohibits email service providers from disclosing contents of private email accounts to third-parties except for very limited circumstances not present in this case.[38] Yahoo argues that the Foreign Representatives have attempted an end run of the SCA prohibitions by obtaining an order

26. *Id.* at ¶ 4.

27. *Id.*

28. *Id.*

29. D.I. 571.

30. D.I. 577.

31. D.I. 582.

32. D.I. 586.

33. D.I. 588.

34. D.I. 591.

35. D.I. 592.

36. D.I. 588-1.

37. D.I. 593.

38. *See* D.I. 588-1, p. 2.

from the Court purporting them to be the "subscriber" of the Yahoo Account so that they would allegedly be able to give "lawful consent." However, Yahoo insists that only the actual subscriber's lawful consent supports disclosure under the SCA. Yahoo claims that the SCA does not allow any consent by court designated proxy, and so implied-in-law consent, consent by inaction or consent by legal substitutes are not sufficient. In the alternative, Yahoo argues that the Foreign Representatives are not entitled to turnover of data from the Yahoo Account under the Bankruptcy Code since the Foreign Representatives have failed to present any evidence that the information they seek is property of the Debtor's estate or relate to the Debtor's property or financial affairs.

## A. Preliminary Procedural Issues

### i. Due Process Considerations

■ Yahoo asserts that the Court should not compel it to divulge contents contained in the Yahoo Account because the Subscriber Order did not comport with due process standards, particularly in light of the lack of notice of the Motion in Aid of the Order to Compel and the Subscriber Order to Rasimov.[39] Yahoo argues that the Foreign Representatives failed to give Rasimov notice of the nature of the sanction they demanded from this Court in the Motion in Aid of the Order to Compel (i.e.,

the request to be deemed as the subscriber of the Yahoo Account and the ability to consent to the disclosure of its contents). Specifically, Yahoo claims that the Foreign Representatives made no attempt to serve Rasimov with motions and orders other than through the Yahoo Account, which has not been successful since October of 2014.[40]

Since Rasimov's identity and locations are unknown [41] and the Foreign Representatives lack other methods of communication with him,[42] the 2004 Order expressly authorized the Foreign Representatives to serve Rasimov through the Yahoo Account.[43] However, it appears that after the 2004 Motion was successfully served on Rasimov through email, the Yahoo account was shut down. The only parties with authority to terminate the Yahoo Account, under the "Yahoo Terms of Service," were Yahoo and Rasimov.[44] Yahoo has not acknowledged that it shut down the account and so the Foreign Representatives rightly indicate that the only logical conclusion is that Rasimov (or someone on his behalf) terminated it upon receiving the 2004 Motion.[45]

■ Closing the only means by which he could receive notice of matters before this court, Rasimov (or Yahoo on his behalf) could not be heard to complain about insufficient notice.[46] Furthermore, the For-

---

39. *Id.* at p. 2.

40. *Id.* at p. 4.

41. *Id.* at p. 6 n.3 "Rasimov is *believed* to be located in Russia" (emphasized added); however, during the Hearing the Foreign Representatives' counsel claimed that they believe Rasimov is from the former Czechoslovakia but admitted they do not know Rasimov's physical whereabouts now. March 1, 2016 Hr'g Tr. ("Hr'g Tr.") 8:1-12.

42. D.I. 593, ¶ 18.

43. *See* the 2004 Order, ¶ 2. D.I. 442.

44. *See* Turner Decl., Yahoo Terms of Service ¶ 15 ("Termination"). D.I. 579-1.

45. D.I. 593, ¶ 19.

46. *See, e.g., LG Electronics, Inc. v. ASKO Appliances, Inc.,* 2009 WL 1811098 at 4 (D. Del. June 23, 2009) (denying motion to dismiss for insufficiency of service of process where defendant's "efforts to contest service can be best characterized as an intentional, vexatious attempt to evade service, if not avoid it entire-

eign Representatives rightly assert that Yahoo seems to lack third-party standing to raise Rasimov's due process rights.[47] As the Third Circuit articulated, "[t]he doctrine of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated' "[48] . . . and that one of the prudential limits on federal court jurisdiction demands that a party "assert[s] his own legal rights and interests, and [ ] not rest his claim to relief on the legal rights or interests of third parties'."[49] The prohibition on third-party standing, however, "is not invariable and our jurisprudence recognizes third-party standing under certain circumstances."[50] Third-party standing may be appropriate where, *inter alia*, the absentee party faces some obstacles that prevent it from pursuing its own claims.[51]

However, nothing here indicates that this is the case in regard to Rasimov. In fact, the only impediment to Rasimov protecting his interests is that he shut down the Yahoo Account in what seems like an attempt to seal himself off from this proceeding.

■ At any rate, the Court is of the opinion that given the circumstances presented here, service to Rasimov satisfied due process. To satisfy due process, the method approved must be "reasonably calculated under the totality of the circumstances, to inform of the pending [ ] action and allow the opportunity to respond and object."[52] Accordingly, email notice has been recognized by courts as an effective means of providing notice in appropriate circumstances.[53] Taking into account that

---

ly" and authorizing service on counsel under Fed. R. Civ. P. 4(f)(3) because the court would not "countenance the continued attempts to unnecessarily frustrate service . . ."); *Susquehanna Commercial Finance, Inc. v. French*, 2011 WL 1743503 at 4 (E.D. Pa. May 5, 2011) (granting default judgment where defendants asserted deficient service because, in part, it was "clear that Defendants have intentionally attempted to evade service in this case. It appears they are doing everything possible to avoid this litigation").

**47.** Foreign Representatives' Suppl. Reply, pp. 9-10. D.I. 593; *see, e.g., Pennsylvania Psychiatric Soc'y. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) ("[i]t is a well-established tenet of standing that a 'litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties' " (citing *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).

**48.** *In re Majestic Star Casino, LLC*, 716 F.3d 736, 748 (3d Cir. 2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), which cited *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)).

**49.** *In re Majestic Star Casino*, 716 F.3d at 748 (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

**50.** *Id.* (quoting *Pennsylvania Psychiatric Soc'y. v. Green Spring Health Servs., Inc.*).

**51.** *See Pennsylvania Psychiatric Soc'y. v. Green Spring Health Servs., Inc.*, 280 F.3d at 288–289 (". . .third-party standing requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a "close relationship"; and 3) the third party must face some obstacles that prevent it from pursuing its own claims").

**52.** *In re Heckmann Corp. Sec. Litig.*, 2011 WL 5855333 at *3 (D. Del. Nov. 22, 2011) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

**53.** *See, e.g., Id.* at *4 ("so long as the method of service is reasonably calculated to reach the defendant and allow the opportunity to object and respond to the litigation, service through email comports with the due process clause"); *In re Barkats*, 2014 WL 4437483 at *2 (Bankr. D.D.C. Sep. 8, 2014) (allowing email service where "debtor has been difficult to locate and that he has taken affirmative steps to frustrate the petitioning creditors'

the Foreign Representatives have no contact information for Rasimov other than the Yahoo Account, issuing notice through this channel was a reasonable way to inform Rasimov about the proceeding.

### ii. "Res Judicata" Argument

■ The Foreign Representatives argue that Yahoo is belatedly objecting to the relief sought in the Motion to Compel and Motion in Aid of the Order to Compel or belatedly seeking reconsideration of the Order to compel or the Subscriber Order. The Foreign Representatives claim that Yahoo had several opportunities to be heard regarding the relief previously sought from this Court but has chosen to remain silent.[54] Accordingly, the Foreign Representatives believe that Yahoo cannot come at this time and ask to reopen issues already decided by the Court.[55] In the Foreign Representatives view, the previous orders entered by this Court are final and Yahoo is bound by them. In other words, the Foreign Representatives insist that Yahoo's arguments regarding the use of civil discovery under the SCA and whether there is a bankruptcy exception to the SCA are irrelevant at this stage of the proceeding.[56]

However, at the same time, the Foreign Representatives admit that the previous motions were not aimed at obtaining "the contents of the Yahoo Account through discovery that has been issued to *Yahoo*, but through discovery that has been issued to *Rasimov*"[57] (emphasized in original). Furthermore, the Foreign Representatives also acknowledge that "[t]he Order to Compel did not direct Yahoo to do anything, but instead directed Rasimov to consent to the disclosure of the contents of the Yahoo Account ... Similarly, the Subscriber Order did not direct Yahoo to do anything, but rather designated the Foreign Representatives as the 'subscriber' of the Yahoo Account."[58] Additionally, it is worthwhile noting that Yahoo did not enter a notice of appearance in this proceeding.[59]

■ It is unclear whether Yahoo was under an obligation to respond to the Motion in Aid of Order to Compel, which resulted in the Subscriber Order, because that motion was not directed at Yahoo. Therefore, there is some logic behind Yahoo's argument that it was not a party in interest [60] with respect to this proceeding because none of the previous motions were directly aimed towards Yahoo or requested Yahoo to take any action.[61] As one treatise

---

efforts at service"); *Rosenthal v. Christiana Bank & Trust Co.*, 2012 WL 4442793 (D. Del. Sep. 24, 2012) ("service of process via email has been authorized by federal courts, pursuant to Fed. R. Civ. P. 4(f), when the circumstances indicate that traditional methods are inadequate and that service via email would comport with Due Process"); *In re International Telemedia Ass'n, Inc.*, 245 B.R. 713, 720–721 (Bank. N.D. Ga. 2000).

**54.** With respect to the Motion in Aid of the Order to Compel, Yahoo asserts it did not object "due to a problem with the mail sorting system in Yahoo's counsel's office." However, there is no dispute that Yahoo discovered about the Motion in Aid of the Order to Compel on the day of the Subscriber Order

and still did not lodge a motion for reconsideration or pursue an appeal, *see* Yahoo's Objection, p. 4 n.3. D.I. 577.

**55.** *See* Foreign Representatives' Reply in Support of the Turnover Motion, p. 5. D.I. 582.

**56.** *See Id.* at p. 5.

**57.** *Id.* at p. 6.

**58.** *Id.*

**59.** *See* Fed. R. Bankr. P. 9010(b).

**60.** *See* 11 U.S.C. § 1109(b).

**61.** *See* Yahoo's Objection, p. 4 n.3. D.I. 577.

explains, "although the concept of a 'party in interest' is necessarily broad, it was not intended to include literally every conceivable entity that may be involved in or affected by that [ ] proceedings."[62] Similarly, "even if one hold an indirect interest in the outcome of the proceeding (e.g., because the outcome may have some effect on the case and, thus, may affect his or her stake in the case), principles of standing may restrict participation if the issues addressed in the proceeding are not more than marginally relevant to his or her interest generally."[63]

█ On the other hand, the list of potential parties in interest in section 1109(b) of the Bankruptcy Code is not exclusive.[64] "Thus, a person not expressly enumerated in section 1109(b) may also qualify as a 'party in interest' if the person possesses a significant legal (as contrasted with financial) stake in the outcome of the case."[65] In this regard, the Third Circuit held as follows:

> The United States Court of Appeals for the Seventh Circuit has described a party in interest as 'anyone who has a legally protected interest that could be affected by a bankruptcy proceeding.' *In re James Wilson Associates*, 965 F.2d 160, 169 (7th Cir.1992). That 'party in interest' test comports with our own definition of a 'party in interest' as one who 'has a sufficient stake in the proceeding so as to require representation.' *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985). We thus adopt the test set forth by the Seventh Circuit in *James*

*Wilson* as a helpful amplification of our definition in *Amatex*.[66]

Taking all these considerations into account, the Court concludes that Yahoo was not unequivocally obligated to present its objection earlier in the proceeding. Assuming *arguendo* that the Subscriber Order has a peripheral ramification on Yahoo, it is too attenuated to preclude Yahoo the opportunity to raise its objection. Up until this point, the Foreign Representatives' motions were not directed against Yahoo and the Court's orders did not purport to affect Yahoo's substantial rights. Furthermore, holding now that Yahoo is bound by the Subscriber Order and compelled to turn over the contents of the Yahoo Account would also potentially circumvent the acceptable procedural mechanism. "If turnover is sought from an entity other than the debtor, an adversary proceeding is the proper procedural mechanism."[67] Finally, regardless of the res judicata argument put forward by the Foreign Representatives, and more importantly, the Court believes that there are substantive compelling reasons why it should not find that Yahoo is bound by the Subscriber Order as will be discussed immediately below.

### B. The Foreign Representatives' Attempt to Use the Turnover Provisions of the Bankruptcy Code to Obtain the Contents of the Yahoo Account

The Foreign Representatives request a relief under section 1521(a)(7) of the Bankruptcy Code, making section 542 applicable

---

**62.** 7 COLLIER ON BANKRUPTCY, ¶ 1109.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015).

**63.** *Id.* at ¶ 1109.01[3].

**64.** *See In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 201–211 (3d Cir. 2011).

**65.** 7 COLLIER ON BANKRUPTCY, ¶ 1109.02[1].

**66.** *In re Global Indus. Technologies, Inc.*, 645 F.3d at 210–211.

**67.** 5 COLLIER ON BANKRUPTCY, ¶ 542.02.

to this Chapter 15 case, thereby compelling Yahoo to hand over to them the information contained in the Yahoo Account. Alternatively, the Foreign Representatives seek to obtain the information in the Yahoo Account pursuant to section 1521(a)(5).[68] These provisions provide as follows:

> Upon a recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—(5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court; .
>
> (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

Section 542 states, in pertinent parts, that:

> (a) . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
>
> (e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

The Foreign Representatives suggest two different theories for the turnover of the information contained in the Yahoo Account. *First*, the Foreign Representative submit that they are entitled to all contents of the Yahoo Account because the information is property of the Debtor that must be surrendered under section 542(a)[69] or section 1521(a)(5). According to this argument, the information in the Yahoo Account became the Debtor's property upon the Court designating the Foreign Representatives as the "subscriber." *Second*, the Foreign Representative assert that they are entitled to contents from the Yahoo Account because the information "relates to the [D]ebtor's property or financial affairs," regardless of whether the information is the Debtor's property.[70] Taking into account the different premises underlying these lines of arguments, each will be addressed and analyzed below separately.

### i. Turnover of Property to the Debtor's Estate—§§ 1521(7) and 542(a); § 1521(5)

▇▇▇▇ Section 1521(a) of the Bankruptcy Code catalogs the relief available to a foreign representatives after recognition of a foreign proceeding.[71] The relief under section 1521(a) is discretionary and most of it is consistent with relief regularly granted in domestic cases under other chapters

---

**68.** *See* Turnover Motion, ¶ 41. D.I. 571.

**69.** Section 542(a) refers to section 363(b)(1) which provides in the relevant parts that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate . . .*" (emphasized added).

**70.** *See* Turnover Motion, ¶¶ 54-56. D.I. 571.

**71.** *See* 8 Collier on Bankruptcy, ¶ 1521.01.

of the Bankruptcy Code.[72] However, under this section, the foreign representative is the party empowered to seek relief instead of the trustee or debtor in possession.[73] Subsection 1521(a)(5) permits the delivery of assets in the United States to a foreign representative or another person for administration or realization, while subsection 1521(a)(7) authorizes "any additional relief that may be available to a trustee (except under the United States avoidance law)."[74]

▊ Can the Foreign Representatives turn to the provisions of section 542? No words of limitation restricting the turnover provisions under section 542 appears in the statute,[75] and some courts have grappled with whether the turnover authority is applicable in a Chapter 15 case.[76] However, the decisions all find that turnover relief is available under Chapter 15 in one way or another.[77] Some have concluded that turnover is available only through sections 1521(a)(5) and 1521(b).[78] One decision of this court applied section 542 without discussion.[79] Yet another court ruled that sec-

tion 542 may apply subject to the requirements of section 1522.[80]

▊ The purpose of section 542 of the Bankruptcy Code is "to expand the trustee's power to 'bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced,' ensuring that a broad range of property is included in the estate ...."[81] A turnover action "invokes the court's most basic equitable powers to gather and manage property of the estate."[82]

▊ The turnover requirement is an affirmative duty that arises upon the filing of the bankruptcy petition.[83] By its express terms, section 542(a) is self-executing and does not require that the trustee take any action, commence a proceeding or obtain a court order to compel the turnover.[84] However, where the turnover of property does not occur, the trustee has the authority to compel an entity to turn over property and to seek injunctive relief to protect the asset sought.[85] Importantly,

72. *Id.*

73. *Id.*

74. *Id.* at ¶ 1521.02.

75. *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.01; *Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 734 (9th Cir. 1990) ("[a]s written, the statute speaks to the power of a trustee whether the debtor's estate is in reorganization or liquidation").

76. *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.01.

77. *Id.*

78. *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012) (section 542 is inapplicable except as a measure of burden of entitlement to turnover); *In re Atlas Shipping A/S*, 404 B.R. 726, 744 n.15 (Bankr. S.D.N.Y. 2009).

79. *In re ABC Learning Centers Ltd.*, 488 B.R. 318, 341 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (not discussing section 542).

80. *In re AJW Offshore, Ltd.*, 488 B.R. 551 (Bankr. S.D.N.Y. 2013) (request for turnover of debtor's financial records permitted subject to requirement that the foreign representatives comply with notice and hearing requirements and any necessary protections under section 1522).

81. *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.01.

82. *Braunstein v. McCabe*, 571 F.3d 108, 116 (1st Cir. 2009) (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)).

83. *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.02.

84. *Id.*

85. *Id.*

to support a cause of action for turnover, the trustee has the burden of proof,[86] by a preponderance of the evidence, to establish that, *inter alia*, the property constitutes property of the estate.[87] The "property" that is subject to turnover is not identified in section 542(a), but the term is generally understood to mean "property of the estate," as defined in section 541.[88] Furthermore, "[b]y referring to § 363, a section which authorizes the trustee to 'use, sell, or lease ... property of the estate,' the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate"[89] (the equivalent term of art used in Chapter 15 is the property of the debtor "within the territorial jurisdiction of the United States"[90]). Examples of property interests that courts have found to constitute property of the estate that is subject to turnover include the return of a motor vehicle that was repossessed prepetition,[91] a right to cure defaults,[92] tax refunds,[93] an increase in stock value,[94] and insurance proceeds.[95]

Here, no evidence. was presented to demonstrate that the contents of the Yahoo Account were initially property of the Debtor's estate.[96] In fact, the only assertion put forth by the Foreign Representative is that they had received information

**86.** *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.02; *Henkel v. Frese, Hansen, Anderson, Hueston & Whiteheard, P.A. (In re Newgent Golf, Inc.)*, 402 B.R. 424 (Bankr. M.D. Fla. 2009); *Krol v. Crosby (In re Mason )*, 386 B.R. 715, 721 (Bankr. N.D. Ill. 2008); *In re Gartman*, 372 B.R. 790, 795 (Bankr. D.S.C. 2007) ("[t]he burden of proof in a turnover action brought under § 542(a) lies with the party seeking turnover").

**87.** *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.02; section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case;" *see also Bailey v. Suhar (In re Bailey )*, 380 B.R. 486, 490 (6th Cir. 2008); *Lawrence v. Chapter 7 Trustee (In re Lawrence )*, 251 B.R. 630, 640 (S.D. Fla. 2000), *aff'd*, 279 F.3d 1294 (11th Cir. 2002) ("[a]lthough the amount of evidence necessary to satisfy the trustee's burden will vary on a case by case basis, the trustee must prove its case by clear and convincing evidence").

**88.** *See* 5 COLLIER ON BANKRUPTCY, ¶ 542.02[2].

**89.** *Brown v. Pyatt (In re Pyatt )*, 486 F.3d 423, 427 (8th Cir. 2007).

**90.** *See* 11 U.S.C. §§ 1502, 1521(a)(5).

**91.** *See* 5 COLLIER ON BANKRUPTCY, *supra* note 67, ¶ 542.02[2].

**92.** *See Barton v. Barton (In re Barton )*, 58 B.R. 468, 470 (Bankr. D.S.D. 1986); *In re Riding*, 44 B.R. 846, 848 (Bankr. D. Utah 1984) ("[t]he Bankruptcy Court can order the turnover of property in which the debtor holds only a contingent possessory right, such as a right of redemption or the right to cure a default, as long as adequate protection can be afforded to the secured party").

**93.** *See Nichols v. Birdsell*, 491 F.3d 987 (9th Cir. 2007).

**94.** *See In re Ostendorf*, 2011 WL 1060992, 2011 Bankr. LEXIS 1063 (Bankr. D. Neb. Mar. 23, 2011) (when the debtor waited more than a year to tender value of stock held at time of petition, the appreciation in value of the stock over that time was also property of the estate).

**95.** *See Ward v. Unitrin Direct Prop. & Cas. Co. (In re Stafford )*, 357 B.R. 730 (Bankr. W.D.N.C 2006) (fire insurance proceeds are property of the estate subject to turnover).

**96.** Yahoo proclaims that its Terms of Service demonstrate that not even the actual subscriber has a legally recognizable ownership interest in the Yahoo Account or its contents, *see* Yahoo's Objection, pp. 2, 16-17. D.I. 577; however, and without determining what kind of legal rights a user of a private email account holds, this argument seems to fall short. As the Foreign Representatives rightly indicates, the Terms of Service indicate that "Yahoo does not claim ownership of Content you submit or make available for inclusion on the Yahoo Services;" *see* Turner Decl., Yahoo Terms of Services, ¶ 9. D.I. 579-1.

from informants that various email accounts, including the Yahoo Account, were *believed* to be connected to the scheme of concealing IBRC's assets.[97] The Foreign Representative have not presented details regarding the nature of the information the informants handed to them or the basis for the belief that the Yahoo Account is related to the alleged scheme. Therefore, the Court concludes that the Foreign Representatives, as the party that bears the burden of proof, failed to introduce sufficient evidence that, by a preponderance, shows that the contents of the Yahoo Account belonged to the Debtor's estate before or at the commencement of this case or the Irish Proceeding.

However, the Foreign Representatives assert that the contents contained in the Yahoo Account became the Debtor's property under section 541(a) and section 1521(5) after the Subscriber Order deemed them to be the "subscriber" of the Yahoo Account.[98] But this argument puts the cart before the horse. *First*, "[i]t is a given that '[t]he trustee [or debtor-in-possession] can assert no greater rights than the debtor himself had on the date the [bankruptcy] case was commenced'."[99] As the Third Circuit emphasized "[n]otwithstanding 'Congress' intention to bring anything of value that the debtors have into the estate,' ... the legislative history of § 541 also demonstrates that it was 'not intended to expand debtor's rights against others more than they exist at the commencement of the case'."[100] As already concluded, IBRC had no property interest in the Yahoo Account or its contents when this Chapter 15 case (or the foreign insolvency proceeding) was commenced. Thus, the Foreign Representatives' claim that the Yahoo Account became estate property when they were deemed as the "subscriber" fails because that would contravene the underlying notion of the Bankruptcy Code.

*Second*, consistent with the abovementioned Bankruptcy Code's intent, a better interpretation would suggests that the Subscriber Order did not purport to transfer property rights in the Yahoo Account to the Debtor's estate. Rather, the Subscriber Order declares that "the Foreign Representatives shall be and hereby are designated as the 'subscriber' of the Yahoo Account."[101] It is uncertain whether a designation of this sort has the power to create a property interest in the Debtor's favor.

*Third*, even assuming, *arguendo*, that the Subscriber Order did transfer to the Foreign Representatives, or to the Debtor's estate, some sort of property rights, the Court should consider whether the circumstances justify to enforce such rights against Yahoo as requested by the Turnover Motion. As will be discussed below, the Court concludes that the SCA presents a compelling reason why Yahoo should not be compelled to disclose the contents of the Yahoo Account and, in turn, establishes a justified reason for the Court to

97. *See* Turnover Motion, ¶ 13; Hr'g Tr. 5:19-24.

98. *See* Turnover Motion, ¶ 55 ("... the information became the Debtor's property upon the Court designating the Foreign Representatives as the "subscriber" of the Yahoo Account"). D.I. 571.

99. *In re Majestic Star Casino, LLC*, 716 F.3d 736, 748 (3d Cir. 2013) (quoting *Guinn v.*

*Lines (In re Trans-Lines West, Inc.)*, 203 B.R. 653, 660 (Bankr. E.D. Tenn. 1996)).

100. *Id.* at 759 (quoting *Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir.1991), and S. Rep. No. 95–989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868)).

101. Subscriber Order, ¶ 2. D.I. 555.

use to its equitable powers to alter the Subscriber Order or to relieve Yahoo from the requested relief sought by the Turnover Motion.[102]

### ii. Turnover of Information that Relates to the Debtor's Estate—§§ 1521(7) and 542(e)

█ The Foreign Representatives alternative argument is that regardless of whether the contents contained in the Yahoo Account are indeed property of the Debtor's estate, section 542(e) compels the turnover of non-privileged documents so long as they relate to the debtor's property or financial affairs.[103] As one court well described, "subsection (e) of § 542 is directed to persons holding recorded information that is not property of the estate but is otherwise relevant to the debtor's property or financial affairs."[104]

Yahoo argues that the Foreign Representatives are not entitled to turnover of the contents of the Yahoo Account under section 542(e).[105] Yahoo engages in an interpretation effort to narrowly restrict section 542(e) to attorneys and accountants. Yahoo points to the legislative history of section 542(e) to assert that this provision applies only to attorneys and accountants.[106] Namely, Yahoo claims that the legislative history and the available case law suggest that the sole intent of section 542(e) was to "eliminate the leverage of professionals granted by state law lien provisions to withhold information necessary to the administration of the estate."[107] However, Yahoo's argument on this point is not convincing. Yahoo's attempt to read the word "or other person" out of the statute or replace the word "person" with the term "professional" is refuted by the fact that Congress chose to

**102.** *See* 11 U.S.C. § 105; 11 U.S.C. § 1506 provides a public policy exception to the provisions under Chapter 15 stating that nothing "prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States;" Additionally, with certain exceptions not relevant here, Fed. R. Bankr. P. 9024 incorporates Fed. R. Civ. P. 60(b), which in turn provides that a party may move for relief from "a final judgment, order, or proceeding" for a number of reasons, including that "applying [the judgment] prospectively is no longer equitable;" as well as "any other reason that justified reason that justified relief." Fed. R. Civ. P. 60(b)(5)–(6); *see In re Caldwell/VSR, Inc.*, 353 B.R. 130, 135 (Bankr. E.D. Va. 2005) ("[A] bankruptcy court has the authority to alter or amend its own orders to remedy inequities, through, among other methods, the use of Rule 60(b)").

**103.** "Documents" has been broadly interpreted to include electronic files. *See In re The Terraces Subdivision, LLC,* 2007 WL 4287742 (Bankr. D. Alaska. Dec. 5, 2007) (requiring the turnover of AutoCAD electronic files); *see also Sola Communs., LLC v. Defense Dynamics, LLC (In re Sola Communs., LLC),* 2005 WL 4806063, 2005 Bankr. LEXIS 3065 (Bankr. W.D. La. Dec. 21, 2005).

**104.** *Keller v. Blinder (In re Blinder, Robinson & Co.),* 140 B.R. 790, 793 (D. Colo. 1992); *see also American Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re American Metrocomm Corp.),* 274 B.R. 641, 652 (Bankr. D. Del. 2002) ("[a]lthough an action for turnover under § 542(a) requires that the information requested be property of the estate, there is no such requirement in § 542(e). Therefore, whether the Attorney Files constitute property of the estate is irrelevant to the Court's determination of whether turnover is proper under § 542(e)"); *In re Heritage Org., L.L.C.,* 350 B.R. 733, 737 (Bankr. N.D. Tex. 2006).

**105.** Yahoo's Objection, p. 18. D.I. 577.

**106.** H.R. Rep. No. 595, 95th Cong., 1st Sess. 396-370 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 84 (1978).

**107.** *In re Heritage Org., L.L.C.,* 350 B.R. at 740; *see also In re American Metrocomm Corp.,* 274 B.R. at 652-653; *In re Hechinger Invest. Co. of Del.,* 285 B.R. 601 (D. Del. 2002); *Foster v. Hill (In re Foster),* 188 F.3d 1259, 1265 (10th Cir. 1999).

use the word "person," which is broadly defined term under section 101(41) of the Bankruptcy Code (rather than the more limiting term "professional").[108] Additionally, the Foreign Representatives rightly suggest that the case law does not support Yahoo's interpretation of section 542(e).[109] Nevertheless, the Court finds the parties' arguments regarding the appropriate interpretation of section 542(e) to be largely irrelevant to a resolution of the Turnover Motion. As will be suggested below, other reasons regarding the specific circumstances of this matter stand between the Foreign Representatives and their target to get access to the contents of the Yahoo Account.

The Foreign Representatives failed to present any evidence that the contents they seek actually relate to the Debtor's property or financial affairs. "[T]he language of Section 542(e) suggests that the Trustee must carry an initial burden to establish that the Documents 'relat[e] . . . to the debtor's property or financial affairs'."[110] Here, the Foreign Representatives demand the entire contents of the Yahoo Account solely on the assertion that the Yahoo Account is "believed to be connected to the Quinn Family and/or their agents perpetrating their improper scheme of concealing assets . . . ."[111] But this is no more than a speculation. In other words, the Foreign Representatives failed to put forward sufficient facts or data to convince the Court that the requested materials relate to the debtor's property or financial

affairs. In *In re Heritage Organization., L.L.C.*, the Bankruptcy Court for the Northern District of Texas carefully analyzed each document sought by the trustee under section 542(e), *in camera*, and determined whether that document actually related to the debtor's property or financial affairs. In that case, the trustee claimed that certain documents, which were held by an attorney who provided legal services to the debtor and various related entities, actually related to the debtor's property or financial affairs. The court rejected the trustee's contention regarding two out of three documents because the trustee failed to "provide[ ] any evidence whatsoever about the relationship between the Debtor on the one hand and [the entities to which the documents pertain] on the other."[112] Much like in *Heritage Organization*, the lack of evidence showing whether the contents of the Yahoo Account actually relate to the Debtor's property or financial affairs should result in the denial of the Turnover Motion.

 Furthermore, as opposed to section 542(a), section 542(e) "is not self-executing and the court need not grant the relief requested in an unusual case."[113] As will be discussed below, the SCA presents a compelling reason why the Court should refrain from ordering Yahoo to disclose the contents contained in the Yahoo Account. Accordingly, the Court finds it appropriate to use its discretion to deny the relief sought by the Turnover Motion.

108. *See* 11 U.S.C. § 101(41).

109. Foreign Representatives Reply, D.I. 582, ¶ 49-50; *see, e.g., In re The Terraces Subdivision, L.L.C.*, 2007 WL 4287742, at *2 (Bankr. D. Alaska Dec. 5, 2007); *Sola Communications, L.L.C. v. Defense Dynamics, L.L.C. (In re Sole Communications, L.L.C.)*, 2005 WL 4806063, at 2 (Bankr. W.D. La. Dec. 21, 2005).

110. *In re Heritage Org.*, 350 B.R. at 740.

111. Turnover Motion, ¶ 13.

112. *In re Heritage Org., supra* at 740.

113. 5 COLLIER ON BANKRUPTCY, ¶ 542.06[1].

## C. The SCA Bars Disclosure of the Information in the Yahoo Account

### i. The SCA Statutory Framework

 The SCA regulates the disclosure of email and other electronic communications by email service providers to third-parties. The purpose of the SCA is to create a "zone of privacy to protect internet subscribers from having their personal information wrongfully used and publicly disclosed by 'unauthorized private parties'."[114] As part of this scheme, the SCA delineates when a service provider, such as a webmail provider, may or may not disclose the contents of its customers' electronic communications or information about those customers.[115] Both a provider of an electronic communication service and a remote computing service to the public are prohibited from knowingly divulging the contents of a communication to a third-party, absent an applicable exception.[116] As one court elucidated, "the SCA's requirement of 'lawful consent' is manifestly intended to invest users with the final say regarding disclosure of the contents of their stored messages while limiting the burdens placed on service providers ...."[117] Another court explained that "the SCA effectively protects against disclosures obtained directly from third-parties, not under traditional discovery rules, 'which makes sense given that a non-party generally would not have an opportunity to appear to contest the scope or validity of a request'."[118]

Here, the parties have tacitly accepted the fact that the contents of the Yahoo Account are covered by the SCA's prohibition. Therefore, the Turnover Motion runs afoul of the SCA unless the Foreign Representatives' demand qualifies for one of the exceptions set forth by the statute.

---

114. *In re Subpoena Duces Tecum to AOL*, 550 F.Supp.2d 606, 610 (E.D. Va. 2008) (citing Sen. Rpt. 99-541 at 3 (1986)). Congress intended the SCA to cover email providers, *see Id.* at 14 ("Existing telephone companies and electronic mail companies are providers of electronic communications services."). *See also In re Toft*, 453 B.R. 186 (Bankr. S.D.N.Y. 2011)

115. 18 U.S.C. § 2702(a)(1).

116. The scope of protections varies with the service being offered: A message stored in the course of electronic communication service is protected from disclosure only during electronic storage by that service, which means temporary or intermediate storage. Communications stored in the course of remote computing services, such as Yahoo, receive generally broader protection. The SCA states that a provider of an "electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service..." *Id.*, § 2702(a)(1). Similarly, a provider of "remote computing service" generally "shall not knowingly divulge ... the contents of any communication which is car-ried or maintained on that service" *Id.*, § 2702(a)(2). The statute defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications..." *Id.*, § 2510(15)(a)(1). Additionally, "'electronic storage' means any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.*, § 2510(17). "Remote computing service" means "the provision to the public of computer storage or processing services by means of an electronic communications system." *Id.*, § 2711(2). *See Negro v. Superior Court*, 230 Cal.App.4th 879, 179 Cal.Rptr.3d 215, 221 (Ct. App. 2014)

117. *Id.* at 228.

118. *Lucas v. Jolin*, 2016 WL 2853576 1, 6 (S.D. Ohio May 16, 2016) (citing 4 E-Commerce and Internet Law Part IX, § 50.06[4][C][v] (December 2015 updated)).

### ii. Existing Case Law Does Not Support the Premise that Disclosure Subjected to the SCA's Prohibition Can Be Compelled Based on Imputed Consent · or by Designating a Third-Party as the "Subscriber"

The SCA contains eight enumerated exceptions to the prohibition of disclosing contents of an electronically stored communication. For present purposes,[119] a provider is excused from the SCA's prohibition when specific users give "lawful consent" to disclose contents to a third-party.[120] Consent is effective as to a specific communication if given by "the originator or an addressee or intended recipient of such communication, or the subscriber ...."[121] Here, there is no dispute that Rasimov, the original subscriber of the Yahoo Account, has the power to give lawful consent to disclose the email massages at issue. Also, there is no dispute that Rasimov has failed to provide such consent.[122] Furthermore, the parties agree that the Court has authority to compel a party refusing discovery to provide consent under the SCA.[123] In fact, the Foreign Representatives concedes that this, in fact, was the underlying purpose of the Order to Compel and the Subscriber Order, which were issued against Rasimov, not Yahoo.[124] The question that the parties take issue with is whether the Court could order the production of electronically stored information from an email service provider when the account user refuses to give his or her consent to the disclosure.

The Foreign Representatives assert that in the face of Rasimov's unwillingness to participate in this proceeding and his failure to comply with the discovery orders issued to him, the Court has further authority to fashion appropriate remedies and order Yahoo to disclose the contents of the Yahoo Account without the explicit consent of Rasimov. Specifically, the Foreign Representatives are seeking to use the turnover provisions of the Bankruptcy Code to obtain what Rasimov has refused to provide.[125] On the other hand, Yahoo asserts that the relief sought by the Foreign Representatives is barred by the SCA. In other words, Yahoo asserts that the SCA does not provide a mechanism for private parties to compel disclosure of a user's email via a subpoena or court order directed at the service provider. Further, Yahoo insists that the required consent must be given by a party to the communication or the account subscriber, and that such consent cannot be compelled by a court on a theory of imputed consent.[126]

Faced with this statutory deadlock, courts interpreting the SCA have declined to create an "implicit exception to the

---

119. 18 U.S.C. § 2702(b)(1)–(8). Several other exceptions set forth permissible disclosure to government entities which are not relevant to this case.

120. *Id.,* § 2702(b)(3).

121. *Id.*

122. *See* Foreign Representatives' Reply in Support of the Turnover Motion, ¶ 2. D.I. 582

123. *See* Hr'g Tr. 39:1-4; coerced consent in such circumstances is not a novel idea. As the California Court of Appeal stated in *Negro v. Superior Court*, 230 Cal.App.4th 879, 179 Cal. Rptr.3d 215, 229 (Ct. App. 2014) "... courts in a variety of other settings have compelled parties to consent to a third party's disclosure of material where such consent was a prerequisite to its production."

124. *See* Foreign Representatives' Reply in Support of the Turnover Motion, ¶ 21, 29, 32. D.I. 582.

125. 11 U.S.C. §§ 542(a) and (e).

126. *See* Yahoo's Objection, p. 9. D.I. 577.

[SCA] for civil litigation,"[127] and have repeatedly found that persons other than the actual subscriber may not give consent to disclose information found in a private email account. In fact, the Foreign Representatives admit that "no decision has been found designating a [third] party as a 'subscriber' under the SCA as a discovery sanction."[128] No case was presented where a court ordered a service provider to disclose electronically stored messages based on its own declaration, contrary to fact, that the subscriber has consented to disclosure.

In *Negro*,[129] the California Court of Appeal determined that under the SCA a court cannot deem a subscriber to have consented when he has not.[130] In that case, an employer sued a former employee in Florida and the employer sought access to the contents of the employee's Gmail account through a California court. Google moved to quash the subpoena on grounds that the SCA prohibited disclosure. In denying Google's motion, the lower court imputed consent to the employee and concluded that "court ordered consent" was sufficient under the SCA.[131] The California Court of Appeal reversed, holding that "[t]he 'lawful consent' exception to the prohibitions of the [SCA] is not satisfied by consent that is merely constructive, implied in law, or otherwise *imputed* to the user by a court"[132] (emphasis in original). Rather, consent for the purposes of the SCA "must be consent in fact."[133] The appellate court acknowledged that courts can use the coercive power of discovery sanctions to obtain a litigant's consent to the disclosure. However, courts cannot "bypass this step and simply declare that users have consented when in fact they have not."[134]

Other courts have come to similar conclusions regarding judicially-manufactured consent over the steadfast objection of an email user. That is, that the SCA does not provide for a mechanism in civil litigation to compel disclosure of a user's private email contents through a subpoena or a court order directed at the service provid-

---

**127.** *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). *See also In re Subpoena Duces Tecum to AOL*, 550 F.Supp.2d 606, 609–611 (E.D. Va. 2008); *Special Markets Ins. Consultants, Inc. v. Lynch* 2012 WL 1565348 (N.D. Ill., 2012).

**128.** Foreign Representatives' Reply in Support of the Turnover Motion, p. 12 n.10. D.I. 582.

**129.** *Negro v. Superior Court*, 230 Cal.App.4th 879, 179 Cal.Rptr.3d 215 (Ct. App. 2014). To be clear, this does not suggest that when an email user expressly consents to disclosure, a civil subpoena is ineffectual to compel service provides to produce electronically stored contents. Accordingly, the California Court of Appeal emphasized that nothing "in the language of the [SCA] suggesting that Congress intended to grant service providers a blanket immunity from obligations imposed by discovery laws." *Id.* at 230–231; *see also Flagg v. City of Detroit*, 252 F.R.D. 346, 367 (E.D. Mich. 2008) (in light of the SCA, the court did not enforce discovery subpoena directed to electronic service provider, but ordered the plaintiff to file a Rule 34 document request propounded to an opposing party).

**130.** At the end, Negro has been ordered by a Florida court to give his express consent to disclosure, and he has complied with that order by emailing Google and consenting to the production of the emails sought by Naval-impianti USA Inc. Accordingly, the California Court of Appeal held that this express consent took the contemplated production outside the scope of the SCA and permitted Google to provide the requested disclosure. *See id.* at 218, 227.

**131.** *Id.* at 220.

**132.** *Id.*

**133.** *Id.*

**134.** *Id.* at 223.

er when none of the parties to the communication gave their consent.[135] Indeed, the Foreign Representatives' counsel admitted during the Hearing that they were unable to find a single case that supports the notion of designating someone else as the subscriber.[136]

In *Bower v. Bower*,[137] acknowledging "frustration," the United States District Court for the District of Massachusetts rejected a contention that a litigant who had left the country and refused to appear could be "deemed" to have consented to disclosure of contents contained in her email account. The court distinguished cases where plaintiffs were held to have impliedly consented to disclosure by "affirmative participation in the judicial process."[138] In that case, the plaintiff, a father and legal custodian of two children, brought an action against the mother alleging that the children were abducted by her from their home in Massachusetts to Egypt.[139] The mother was a fugitive who had not appeared during the proceeding and the father was seeking to compel Yahoo and Google to produce all emails from the mother's email accounts.[140] Much like in our case, it was undisputed that if the mother had authorized the disclosure of her emails, the email service providers would have comply with that request and respond to the subpoenas issued by the father.[141] However, the court found nothing

in the mother's actions from which it could imply an intent to consent to the disclosure of the electronically stored information.[142] The court said that the fact that the mother was a fugitive who had not participated in the litigation and had not sought to make affirmative use of the judicial system made the case easily distinguishable from those where courts had found an implied agreement to consent in light of an affirmative participation in the proceeding.[143] The court emphasized that it did not minimize the father's frustration with the situation, but nonetheless concluded that the SCA precluded the email service providers from handing over the requested information contained in the email accounts.

In *Suzlon Energy Ltd. v. Microsoft Corp.*[144] the Court of Appeals for the Ninth Circuit upheld a motion by an email service provider to quash the production of documents from a domestic email account of a foreign citizen. The plaintiff filed an action against Microsoft for the production of the subscriber's emails for use in a civil fraud proceeding pending in Australia. The emails were stored on a domestic server of Microsoft's Hotmail email service. The court of appeals held that the SCA prohibited Microsoft from divulging the emails without the subscriber consent. More importantly, the court of appeals held that the SCA extends its protections to foreign citizens.[145] Furthermore, the court of ap-

**135.** *See Lucas v. Jolin,* 2016 WL 2853576 at 1, 6 (S.D. Ohio May 16, 2016); *Elcometer, Inc. v. TQC–USA, Inc.,* 2013 WL 5346382 (E.D. Mich. Sept. 23, 2013).

**136.** *See* Hr'g Tr. 24:20-25, 25:1-7.

**137.** 808 F.Supp.2d 348 (D. Mass. 2011).

**138.** *Id.* at 351. *See also Negro v. Superior Court,* 230 Cal.App.4th 879, 179 Cal.Rptr.3d 215, 224–225 (Ct. App. 2014).

**139.** *Bower,* 808 F.Supp.2d at 349.

**140.** *Id.*

**141.** *Id.* at 350.

**142.** *Id.* at 351.

**143.** *Id.* at 351.

**144.** 671 F.3d 726 (9th Cir. 2011).

**145.** The court of appeals found that the SCA as a whole confirms that Congress intended the term "any person" in 18 U.S.C. § 2510(13) to cover non-citizens, *see id.* at

peals rejected the argument that Congress intended that the SCA's prohibition would apply only to government law enforcement and not to civil matters. The court said that even if Congress' most pressing concern was law enforcement agencies issuing subpoenas that did not mean that Congress was not also concerned about civil litigants issuing discovery requests.[146] The court of appeals held that "declaring an implicit exception to the [SCA] for civil litigation would erode the safety of the stored electronic information and trigger Congress' privacy concerns."[147] The court also rejected the argument that the subscriber, as a litigant, impliedly consented to the production of his emails because he had a duty to produce the documents under the Australian law.[148]

In *Special Markets Ins. Consultants, Inc. v. Lynch*,[149] the District Court for the Northern District of Illinois quashed a subpoena served on Yahoo because it violated the SCA. The subpoena required Yahoo to produce emails and other information that were stored on three private email accounts owned by former employees of the plaintiff. The court said that the argument that the email service provider was not shown to be an "electronic communication service" was frivolous. The court held that "cases cited by the parties and those located by this court's research have consistently held that Yahoo, AOL, and similar services are, indeed, the 'electronic communication services' contemplated by the SCA."[150] The court stressed that the plaintiff had alternative means to obtain the relevant emails, essentially by serving document requests on the employees, which under Federal Rule of Civil Procedure 34 may require the production of electronically stored information.[151]

In light of the above mentioned cases, and the lack of any case supporting the Foreign Representatives' position, the Court is unwilling to conclude that it has the authority to compel a service provider to divulge the contents of a private email solely at the request of a third-party after the account user has failed to give his or her consent.

### iii. The Bankruptcy Code Does Not Include an Exception to the SCA's Prohibition

 Yahoo argues, correctly, that the authority granted to the bankruptcy courts does not trump the SCA's prohibition on disclosure.[152] As a general matter, Yahoo rightly points to the fact that "the bankruptcy court may not order relief that results in a violation [of] the U.S. Constitution or other federal law."[153] Similarly, the bankruptcy court "is not empowered to amend laws enacted by the United States Congress or individual state legislatures."[154]

With respect to the interplay between the bankruptcy court's authority under

729; *see also In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) ("... the [SCA] has been held to apply irrespective of the foreign nationality of the account holder").

**146.** *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d at 730.

**147.** *Id.*

**148.** *Id.* at 731.

**149.** 2012 WL 1565348 (N.D. Ill. 2012).

**150.** *Id.* at *2.

**151.** *Id.* at *3.

**152.** Yahoo's Objection, p. 12. D.I. 577.

**153.** *In re U.S. Fidelis, Inc.*, 481 B.R. 503, 515 (Bankr. E.D. Mo. 2012).

**154.** *In re Maupin*, 384 B.R. 421, 432 (Bankr. W.D. Va. 2007).

Chapter 15 and the SCA, *In re Toft*[155] is instructive. In that case, a foreign representative of a debtor in a German insolvency proceeding was seeking to gain access to the debtor's email accounts stored on servers of two service providers located in the United States.[156] It was represented in the German proceeding that the debtor refused to cooperate with the administrator and has secreted his assets and relocated them to an unknown country outside of Europe.[157] In accordance with what was alleged to be common German practice, the German court entered a "Mail Interception Order," authorizing the foreign representative, as administrator of the debtor's estate, to intercept the debtor's postal and electronic mail.[158] Accordingly, the foreign representative argued that the relief he sought was permitted under sections 1521 and 1507 of the Bankruptcy Code and that he merely sought enforcement in the United States of orders entered in the foreign proceeding. The Bankruptcy Court for the Southern District of New York denied the motion, holding that the "relief requested would [ ] contravene the protection against disclosure of e-mails by internet service providers contained in the [SCA] ...,"[159] potentially subjecting "an ISP disclosing the debtor's e-mails, to U.S. criminal liability."[160] The bankruptcy court explained that "consistent with the traditional limits of comity, all relief under Chapter 15 is subject to the caveat in

§ 1506, providing the court with authority to deny the relief requested where such relief would be 'manifestly contrary to the public policy of the United States'."[161] The bankruptcy court opined that "there are limits to the assistance that can be rendered to foreign proceedings,"[162] and held that "this is one of the rare cases in which the relief sought by the Foreign Representative must be denied under § 1506 of the Bankruptcy Code as manifestly contrary to the public policy of the United States."[163]

Here, based on the language of the SCA, the purpose of the statute and the foregoing cases interpreting it, the Court concludes that the SCA lacks authority that authorizes it to order an email service provider to divulge the contents of electronic communications without the consent of the account user. Subsequently, the Court finds that the relief granted in the Subscriber Order should not be used to circumvent the SCA's prohibition. Further, the Court determines that the Foreign Representatives are incapable to provide "lawful consent" to disclose the contents contained in the Yahoo Account.

## CONCLUSION

Outwardly, this matter raises significant legal issues regarding privacy in the electronic era. However, at the end, the Court reaches its conclusion based on clear prin-

155. 453 B.R. 186 (Bankr. S.D.N.Y. 2011).

156. *Id.* at 188. The petition in that case stated that the German debtor had no assets in the United States, was not a party to any lawsuits pending in the United States and was not believed to be residing in the United States.

157. *Id.*

158. *Id.* Due to information that the debtor might have relocated to London, a similar order was later issued by the English High Court of Justice.

159. *Id.* at 189.

160. *Id.* at 189, 196, 198.

161. *Id.* at 191, 193 (citing *In re Ephedra Prods. Liability Litig.*, 349 B.R. 333 (S.D.N.Y. 2006)).

162. *Id.* at 191.

163. *Id.*

ciples laid down by Congress in the Bankruptcy Code and the SCA. Specifically, the Court finds that the Foreign Representatives failed to come forward with prima facie evidence that shows that they are entitled to the information sought by the Turnover Motion. Additionally, the Court concludes that the SCA does not enable it to compel Yahoo to hand over the contents of the Yahoo Account without the user's consent. For the foregoing reasons, the Court will deny the Turnover Motion. An order will be issued.